IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
Asheville Division
1:24-cv-264-MR-WCM

ANTHROWARE, L.L.C.,
    Plaintiff,

v.

ATWORK GROUP, LLC,
    Defendant.
_____/

## AMENDED COMPLAINT (JURY DEMAND)

Plaintiff, AnthroWare, L.L.C. ["AnthroWare"], complaining of the Defendant, says and alleges the following:

1. Plaintiff, AnthroWare, is a limited liability company duly organized and existing under the laws of the State of North Carolina since June 2013; having a principal place of business and registered office in Buncombe County, North Carolina; having the capacity to sue in the state courts of North Carolina; and in fact doing business in Buncombe County, North Carolina since June 2013.

2. Defendant, AtWork Group, LLC ["AtWork"] is a limited liability company duly organized and existing under the laws of the State of Tennessee; maintaining and operating offices in at least two North Carolina counties; in fact doing business in North Carolina; and subject to suit in the state courts of North Carolina.

3. This action arises out of a contract that AtWork entered to pay AnthroWare for services to be performed in this State.

4. On or around February 7, 2022, AnthroWare and AtWork executed the Contract, mistakenly dated October 14, 2021, attached to this Amended Complaint as <u>Exhibit 1</u>.

1

Case 1:24-cv-00264-MR-WCM   Document 20   Filed 03/21/25   Page 1 of 13

5. Thereafter, on or around February 7, 2022, AnthroWare and AtWork executed the Contract, dated February 7, 2022 ["the Master Services Agreement"], attached to this Amended Complaint as Exhibit 2 and bearing the MSA (Master Services Agreement) ID "MSA_ATWORK_001." The Master Services Agreement attached as Exhibit 2 is identical to the Contract attached as Exhibit 1, except for the corrected date on the first page of the Master Services Agreement.

6. Paragraph #1 of the Master Services Agreement reads as follows: "[ANTHROWARE] agrees to provide technical consulting services and other specific services set forth in the Exhibit A, attached hereto (hereinafter referred to as 'the Services')."

7. On or around February 7, 2022, AnthroWare and AtWork executed Exhibit A to the Master Services Agreement, bearing MSA ID "MSA_ATWORK_001" ["MSA-Exhibit A"] and attached to this Amended Complaint as Exhibit 2A.

8. MSA-Exhibit A provided, in part, as follows:

"[ANTHROWARE] shall provide technical and creative services for [ATWORK]. This work will be billed as hourly (time and materials) work. All work efforts will be described in separate scope(s) of work."

9. Paragraph #2 of the Master Services Agreement reads, in part, as follows: "[ATWORK] agrees to pay [ANTHROWARE] for the provision of the Services in accordance with terms set forth in Exhibit B, attached hereto."

10. On or around February 7, 2022, AnthroWare and AtWork executed Exhibit B to the Master Services Agreement, bearing MSA ID "MSA_ATWORK_001" ["MSA-Exhibit B"] and attached to this Amended Complaint as Exhibit 2B.

11. MSA-Exhibit B provided a table of AnthroWare's "general hourly compensation rates" but provided that rates are negotiable and may fluctuate from one Scope of Work to the next.

12. The Master Services Agreement did not provide that time was of the essence, and paragraph #3 of the Master Services Agreement further provided as follows:

"[ANTHROWARE] will plan work to be performed in specific periods of time, defined in associated Statement(s) of Work. [ATWORK] and [ANTHROWARE] will work together to define which work will be performed in any given time period. In the event that [ANTHROWARE] fails to deliver its agreed upon body of work in a given time period due to nonresponsiveness, delay, or due to the quality of feedback, response, input, or any other failure to deliver antecedent work on the part of [ATWORK], [ANTHROWARE] shall not be held liable for that delay, and any subsequent timeline is subject to change at the sole cost of [ATWORK] and the incomplete work shall be considered accepted."

13. Paragraph #4 of the Master Services Agreement provided, in part, as follows:

"[ANTHROWARE] agrees that all designs, programs, reports, specifications, drawings, schematics, prototypes, models, inventions and all other information and items made during the course of this Contract and relating directly to the scope of the Services shall be the property of [ATWORK]. It is understood and agreed that expediency may necessitate the use of code that was written or created outside the scope of this project. Ownership of [ANTHROWARE]'s proprietary consulting materials, third-party software, or any re-usable codes, libraries, or software remain the property of [ANTHROWARE]. …

All work and IP produced by [ANTHROWARE] while rendering the Services is the property of [ANTHROWARE] until final payment is received."

14. Paragraph #10 of the Master Services Agreement provided as follows:

"[ATWORK] agrees that any liability of [ANTHROWARE] relating to this contract and the services performed shall be limited to the amount of fees actually received by [ANTHROWARE], from [ATWORK] under this contract regarding the services in question. In no event shall [ANTHROWARE] be liable for any special, incidental, indirect, cover, consequential, exemplary or punitive damages; any damages based

on injury to person or property; or any lost sales, profits or data, even if [ATWORK] is told that any such damages may occur."

15. On February 7, 2022, AtWork and AnthroWare executed a Statement of Work for @Work designated "SOW_ATW_001" ["SOW-1"]. In the Deliverables section, SOW-1 required AnthroWare to deliver certain development, project management, and consulting services relating to the existing TempServ product. In consideration for such services, SOW-1 required AtWork to pay AnthroWare $100,000 by remitting "a monthly recurring retainer" in the amount of $25,000 for four consecutive months.

16. The services and payments under SOW-1 extended from around February through May 2022.

17. On April 22, 2022, AtWork and AnthroWare executed a Proposal for @Work, with a Statement of Work designated "SOW_ATW_002" ["SOW-2"] and titled TempServ Support Plan. In the Deliverables section, SOW-2 required AnthroWare to "[p]rovide a senior development resource to focus on data migration and system documentation," including certain specifically identified services. SOW-2 estimated that the duration of the work outlined in this SOW would be 12 months. In consideration for such services, SOW-2 required AtWork to pay AnthroWare "a monthly recurring retainer" in the amount of $18,144.00, paid "prior to the work to which the fee applie[d]."

18. On May 26, 2022, AtWork and AnthroWare executed a Scope of Work designated "SOW_ATW_003" ["SOW-3"] and titled TempServ 2.0 Build. In the Deliverables section, SOW-3 required AnthroWare to "[p]rovide a product development team allocated to build the next evolution of the TempServ product," including specifically identified services. SOW-3 estimated that this team allocation would last approximately sixteen (16) months. In consideration for such services, SOW-3 required AtWork to pay AnthroWare a monthly recurring retainer in the amount of $144,837.00, paid "prior to the work to which the fee applie[d]." A true and accurate copy of SOW-3 is attached to this Amended Complaint as Exhibit 3.

19. On March 7, 2023, AtWork and AnthroWare executed a Changed SOW for @Work, designated "SOW_ATW_002.1" ["SOW-2.1"] and titled TempServ Support Plan. In the Deliverables section, SOW-2.1 required AnthroWare to continue to "[p]rovide a senior development resource to focus on data migration and system documentation," including certain specifically

identified services. SOW-2.1 continued to estimate a 12-month duration for the work outlined in the SOW. In consideration for such services, SOW-2.1 required AtWork to pay AnthroWare "a monthly recurring retainer" in the amount of $18,144 for the first ten months and an increased "monthly recurring retainer" in the amount of $23,126.04 for the last two months, paid "prior to the work to which the fee applie[d]."

20. On April 24, 2023, AtWork and AnthroWare executed a Changed SOW for @Work, again designated "SOW_ATW_002.1" ["SOW-2.1-2"] and titled TempServ Support Plan. In the Deliverables section, SOW-2.1-2 required AnthroWare to continue to "[p]rovide a senior development resource to focus on data migration and system documentation," including certain specifically identified services. The Scope Change Log noted that "[t]his change only increases the duration of this SOW by three months without changing the scope of deliverables or priorities in any way." In consideration for such services, SOW-2.1-2 required AtWork to pay AnthroWare "a monthly recurring retainer" in the amount of $18,144 for the first ten months and an increased "monthly recurring retainer" in the amount of $23,126.04 for the next five months, paid "prior to the work to which the fee applie[d]."

21. The services and payments under SOW-2, as modified by SOW-2.1 and SOW-2.1-2, extended from May 2022 through July 2023.

22. In August and September 2023, AnthroWare continued to provide the services described in SOW-2.1-2, and AtWork continued to pay a monthly retainer in the amount of $23,126.04, pursuant to a verbal extension of SOW-2.1-2 or, in the alternative, on an implied contract basis.

23. Around July 5, 2023, AtWork and AnthroWare executed a Scope of Work for @Work, with a Statement of Work designated "SOW_ATW_003.1" ["SOW-3.1"] and titled TempServ 2.0 Build. In the Deliverables section, SOW-3.1 required AnthroWare to "[p]rovide a product development team allocated to build the next evolution of the TempServ product," including specifically identified services. SOW-3.1 estimated that this team allocation would last approximately twenty-two (22) months, six months longer than originally estimated under SOW-3, with an "Updated Target End Date: March 31, 2024." In consideration for such services, SOW-3.1 required AtWork to pay AnthroWare a monthly recurring retainer in the amount of $144,837.00, paid "prior to the work to which the fee applie[d]." A

true and accurate copy of SOW-3.1 is attached to this Amended Complaint as <u>Exhibit 3.1</u>.

24. Neither SOW-3 nor SOW-3.1 provided that time was of the essence.

25. AtWork never, at any time, provided AnthroWare written notice of termination of SOW-3, as amended by SOW-3.1.

26. From June 2022 through March 2024, AnthroWare provided services in accordance with SOW-3, as amended by SOW-3.1.

27. However, from June 2022 through April 2024, AnthroWare's work under SOW-3, as amended by SOW-3.1, was delayed or protracted, in substantial part, by AtWork's directives to change the work, AtWork's failure to timely make and communicate decisions affecting the work, and other matters beyond AnthroWare's control.

28. AtWork paid AnthroWare the monthly recurring retainer required under SOW-3, as amended by SOW-3.1, for services provided from June 2022 through November 2023.

29. For services provided from December 2023 through March 2024, AtWork paid AnthroWare a total sum of only $400,000 and failed to pay the full monthly recurring retainer required for these four months under SOW-3, as amended by SOW-3.1.

30. On or around January 31, 2024, AnthroWare tendered a proposed Scope of Work for @Work, with a Statement of Work designated "SOW_ATW_003.2" ["SOW-3.2"] and titled TempServ 2.0 Build.

31. SOW-3.2 described a scope of services to be provided in accordance with the Master Services Agreement. SOW-3.2 proposed a change in the focus of AnthroWare's services, specifically, the following "Deliverables Change: Previous scopes have been team-focused. This is changed to focus on delivery of the finished product, with required workflows defined in the Greenfield_Produce_RTM." In the Deliverables section, SOW-3.2 required AnthroWare to provide services to "[b]urn down the remaining work related to the locked feature set of the Greenfield Platform," including specifically identified services.

6

Case 1:24-cv-00264-MR-WCM    Document 20    Filed 03/21/25    Page 6 of 13

32. SOW-3.2 provided for a "scope and fee schedule [to be] in effect from 11/30/23 through 7/30/2024." In consideration for services under SOW-3.2, the proposal required AtWork to pay AnthroWare a total of $731,223 between December 2023 and July 2024, including a proposed reduction in the amount payable for services rendered from December 2023 through March 2024. Without limiting the foregoing, SOW-3.2 required AtWork to pay AnthroWare $100,000 on June 30, 2024 for July 2024 services and to pay $100,000 in earned but deferred payments "due thirty (30) days after at least one AtWork Tenant* has completed 30 calendar-days of use in the live environment (PILOT), or on 7/30/2024, whichever is sooner."

33. While SOW-3.2 proposed changes to SOW-3.1, SOW-3.2 provided that "[n]o change is considered in force until all parties have signed an agreement to that change."

34. Neither AtWork nor AnthroWare ever signed SOW-3.2.

35. From April 1 to July 10, 2024, AnthroWare continued to provide services of the nature, scope, and quality that it had provided pursuant to the express terms of SOW-3 and SOW-3.1.

36. For services provided from April through June 2024, AtWork paid AnthroWare only $131,223.00.

37. AtWork did not pay AnthroWare anything for services rendered after June 2024.

38. By around July 10, 2024, AtWork repudiated any obligation to pay AnthroWare in accordance with SOW-3.1 and for the reasonable value of services rendered thereafter.

39. After AtWork failed to make any payment for services to be rendered after June 2024 and repudiated any further payment obligation, AnthroWare suspended work on the AtWork project on or around July 10, 2024.

## First Cause of Action: Breach of Master Services Agreement and SOW-3, as Amended by SOW-3.1

40. Pursuant to Rule 10(c) of the North Carolina Rules of Civil Procedure, the Plaintiff incorporates by reference the allegations of paragraphs #1-#39, as if fully set forth and realleged.

41. AtWork materially breached the contract evidenced by the Master Services Agreement and SOW-3, as amended by SOW-3.1, as follows:

(a) By failing to pay the full monthly recurring retainer due for services rendered from December 2023 through March 2024;

(b) By failing the pay the full amount due for services rendered from December 2024 through April 2024; and

(c) By repudiating any obligation to pay AnthroWare the full amount due under the Master Services Agreement and SOW-3, as amended by SOW-3.1.

42. AnthroWare fully performed its obligations under the contract evidenced by the Master Services Agreement and SOW-3, as amended by SOW-3.1, and all conditions precedent to AtWork's obligation to pay AnthroWare the full amount due under the contract have been satisfied.

43. As a direct and proximate result of AtWork's material breach of contract, AnthroWare has sustained damages in the principal amount exceeding $179,700.00, together with interest accruing as provided by law.

## Second Cause of Action: Quantum Meruit

44. Pursuant to Rule 10(c) of the North Carolina Rules of Civil Procedure, the Plaintiff incorporates by reference the allegations of paragraphs #1-#43 above, as if fully set forth and realleged.

45. At AtWork's request and with its assent, AnthroWare provided labor and services for the benefit of AtWork from April 1 through July 10, 2024.

46. At the time AnthroWare provided labor and services for AtWork's benefit, AnthroWare reasonably expected payment for such labor and services.

47. AtWork voluntarily received and accepted AnthroWare's labor and services, with knowledge that AnthroWare expected to be paid therefor.

48. AtWork made some payments to AnthroWare after March 2024 but has failed and refused to pay AnthroWare the full reasonable value for the labor and services rendered after March 2024.

49. The reasonable value of all the labor and services that AnthroWare provided for AtWork's benefit, less the partial payments that AtWork made, exceeds $340,000.00.

50. As a direct and proximate result of the foregoing, equity entitles AnthroWare to recover from AtWork, in quantum meruit, a sum in excess of $340,000.00, together with interest accruing at the legal rate as provided by law.

<u>Third Cause of Action: Breach of Master Services Agreement
and SOW-3, as Amended by SOW-3.1 and SOW-3.2
(In the Alternative to the First and Second Causes of Action)</u>

51. Pursuant to Rule 10(c) of the North Carolina Rules of Civil Procedure, the Plaintiff incorporates by reference the allegations of paragraphs #1-#50, as if fully set forth and realleged.

52. In the event that the Court determines that the parties agreed to the terms of SOW-3.2, then in the alternative to the first and second claims for relief, AtWork materially breached the contract evidenced by the Master Services Agreement and SOW-3, as amended by SOW-3.1 and SOW-3.2, by failing to pay the amount due for services rendered in July 2024; by repudiating the contract; by purporting to terminate the contract with less than 60 days notice; by frustrating and preventing the ability of AnthroWare to complete the work necessary for use of the platform in the live environment (PILOT); and by failing to pay the deferred payment due no later than July 30, 2024.

53. AnthroWare fully performed its obligations under the contract evidenced by the Master Services Agreement and SOW-3, as amended by SOW-3.1 and SOW-3.2, and all conditions precedent to AtWork's obligation to pay AnthroWare the full amount due under the contract have been satisfied.

54. As a direct and proximate result of AtWork's material breach of contract, AnthroWare has sustained damages in a principal amount exceeding $200,000.00, together with interest accruing as provided by law.

54A. In the event that the Court determines that the parties agreed to the SOW-3.2 and that SOW-3.2 was a fixed-sum, end-product contract, then in the alternative to recovery under SOW-3.2 as a services contract, AnthroWare provided labor and services at AtWork's request, with AtWork's assent, and for the benefit of AtWork, including but not limited to services to develop functions and features for the product different from and in addition to those contemplated under SOW-3.2.

54B. At the time AnthroWare provided these labor and services for AtWork's benefit, AnthroWare reasonably expected payment for such labor and services different from and in addition to those contemplated under SOW-3.2.

54C. AtWork voluntarily received and accepted AnthroWare's labor and services different from and in addition to those contemplated under SOW 3.2, with knowledge that AnthroWare expected to be paid therefor.

54D. AtWork made some payments to AnthroWare after December 2023 but has failed and refused to pay AnthroWare the full reasonable value for the labor and services rendered different from and in addition to those contemplated under SOW-3.2 after December 2023.

54E. The reasonable value of all the labor and services that AnthroWare provided for AtWork's benefit different from and in addition to those contemplated under SOW-3.2, less the partial payments that AtWork made, exceeds $225,000.00.

54F. As a direct and proximate result of the foregoing, equity entitles AnthroWare to recover from AtWork, in quantum meruit, a sum in excess of $225,000.00, together with interest accruing at the legal rate as provided by

law, for labor and services different from and in addition to those contemplated under SOW-3.2.

## Fourth Cause of Action: Declaratory Judgment

55. Pursuant to Rule 10(c) of the North Carolina Rules of Civil Procedure, the Plaintiff incorporates by reference paragraphs #1-#54F above, as if fully set forth and realleged.

56. AnthroWare has not received final payment for the services rendered under the Master Services Agreement and SOW-3, as amended by SOW-3.1. Accordingly, all work and IP produced by AnthroWare while rendering services under the Master Services Agreement and SOW-3, as amended by SOW 3.1, is the property of AnthroWare and not AtWork.

57. In the alternative, AnthroWare has not received final payment for the services rendered under the Master Service Agreement and SOW-3, as amended by SOW-3.1 and SOW-3.2. Accordingly, all work and IP produced by AnthroWare while rendering services under the Master Services Agreement and SOW-3, as amended by SOW 3.1 and SOW 3.2, as well as services provided in quantum meruit, is the property of AnthroWare and not AtWork

58. Upon information and belief, AtWork is using, converting, and misappropriating work and IP that is the property of AnthroWare, without right or authorization.

59. Upon information and belief, there is an actual controversy and dispute between AtWork and AnthroWare concerning the respective rights, status, and legal relations of the parties under the Master Services Agreement, SOW-3, and SOW-3.1 and, if applicable, SOW-3.2.

60. Under N.C.G.S. § 1-253 and N.C.G.S. § 1-254, AnthroWare is entitled to a judgment declaring (i) that AnthroWare has not received final payment for the services rendered under the Master Services Agreement and SOW-3, as amended by SOW-3.1; (ii) that AnthroWare has not received final payment for services rendered after April 2024; (iii) in the alternative, that AnthroWare has not received final payment for the services rendered under the Master Services Agreement and SOW-3, as amended by SOW-3.1 and SOW-3.2; and (iii) that all work and IP

produced by AnthroWare while rendering services under the Master Services Agreement, SOW-3, and SOW-3.1, while rendering services after April 2024, and/or while rendering services under SOW-3.2 is the property of AnthroWare.

61. Upon information and belief, AtWork's unauthorized use, conversion, and misappropriation of AnthroWare's property is causing AnthroWare irreparable damages for which it has no adequate remedies at law, including but not limited to loss of benefit of the bargain, interference with and damage to its property rights, and conversion of property. Equity entitles AnthroWare to temporary, preliminary, and permanent injunctive relief barring and preventing AtWork's use of any such work and IP and authorizing AnthroWare to employ measures to cut off and prevent such unauthorized use.

WHEREFORE, the Plaintiff prays the Court as follows:

1. That Plaintiff have and recover judgment against Defendant in a principal sum exceeding $179,700.00, together with interest accruing at the legal rate as provided by law, for breach of contract;

2. That Plaintiff have and recover judgment against Defendant in a principal sum exceeding $340,000.00, together with interest accruing at the legal rate as provided by law, in quantum meruit;

3. In the alternative, in the event that the Court determines that the parties assented and agreed to SOW-3.2, that Plaintiff have and recover judgment against Defendant in a principal sum exceeding $200,000.00, together with interest accruing at the legal rate as provided by law, for breach of contract; further, in the alternative, in the event that the Court determines that the parties assented and agreed to SOW-3.2 and that SOW-3.2 was a fixed-sum, end-product contract, that the Plaintiff have and recover judgment against Defendant in a principal sum exceeding $225,000.00, together with interest accruing at the legal rate as provided by law, in quantum meruit for labor and services provided different from or in addition to those contemplated under SOW-3.2;

4. That the Court enter judgment against the Defendant, awarding the Plaintiff its reasonable attorneys' fees as provided in N.C.G.S. § 6-21.6;

5. That the Court tax the costs of this action against the Defendant;

6. For a trial by jury; and

7. For such other and further relief as the Court may deem just and proper.

This the 21st day of March, 2025.

>The Van Winkle Law Firm
>11 N. Market Street
>Asheville, NC  28801
>Telephone:  (828) 258-2991
>
>By: /s/ Philip S. Anderson
>Philip S. Anderson
>N.C. State Bar #21323
>panderson@vwlawfirm.com

## CERTIFICATE OF SERVICE

This is to certify that I have this day served the Defendant in this action with a copy of this pleading by email, dasmar@bodmanlaw.com, tikkun@lawyersasheville.com, and scott@lawyersasheville.com with the consent of the Defendant.

This the 21st day of March, 2025.

>The Van Winkle Law Firm
>11 N. Market Street
>Asheville, NC  28801
>Telephone:  (828) 258-2991
>
>By: /s/ Philip S. Anderson
>Philip S. Anderson
>N.C. State Bar #21323
>panderson@vwlawfirm.com